**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONNOCO COFFEE LLC | ) | |
| d/b/a RONNOCO BEVERAGE SOLUTIONS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| KEVIN CASTAGNA and | ) | |
| JEREMY TORRES, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

1.      Plaintiff Ronnoco Coffee, LLC d/b/a Ronnoco Beverage Solutions ("Ronnoco") brings this action against Defendants Kevin Castagna ("Castagna") and Jeremy Torres ("Torres") (collectively, "Defendants") to enforce non-competition and confidentiality agreements against each of them, to enjoin the threatened misappropriation of trade secrets, to enjoin interference with prospective business relationships, and to sue for breach of contract and breach of the duty of loyalty.

## Parties

2.      Ronnoco is a limited liability company organized, existing, and in good standing under the laws of the State of Missouri, with its principal place of business at 618 S. Boyle Ave., St. Louis, Missouri 63110. The sole member of Ronnoco is Ronnoco Holdings, Inc., a corporation organized, existing, and in good standing under the laws of the State of Delaware, with its principal place of business at 618 S. Boyle Ave., St. Louis, Missouri 63110.

3.      Castagna is a resident of Texas with a home address of 6408 Chapman Drive, Greenville, Texas 75402.

4.      Torres is a resident of California with a home address of 855 Ivy Ave, Colton, California 92324.

**Nature of the Case**

5.      Castagna was employed by Ronnoco as a Territory Manager in the greater Dallas/Ft. Worth, Texas area from March 17, 2020 until July 23, 2020. Castagna was responsible for a territory comprising roughly the northern half of the State of Texas.

6.      Torres was employed by Ronnoco as a Territory Manager in the greater Los Angeles, California area from March 17, 2020 until July 16, 2020. Torres was responsible for a territory comprising large parts of the States of California, Nevada and Arizona.

7.      Castagna and Torres both were employed by Trident Beverage, Inc. and Trident Marketing, Inc. ("Trident") for over three (3) years before a transaction took place in which Ronnoco acquired a majority interest in Trident.

8.      Castagna and Torres both became employees of Ronnoco at or near the time the transaction took place in which Ronnoco acquired a majority interest in Trident. Ex. 1 (Castagna Offer of Employment); Ex. 2 (Torres Offer of Employment).

9.      As a condition of his employment with Ronnoco, Castagna signed a Fair Competition Agreement with Ronnoco (the "Castagna FCA") on March 17, 2020. Ex. 3 (Castagna FCA).

10.      As a condition of his employment with Ronnoco, Torres signed a Fair Competition Agreement with Ronnoco (the "Torres FCA") on March 17, 2020. Ex. 4 (Torres FCA).

11.      Exhibits 3 and 4, the Castagna FCA and the Torres FCA (the "Agreements"), are identical except for the names and signatures on each.

12.     In the Agreements, Castagna and Torres each agreed that "[d]uring my employment and for two (2) years thereafter, and within two hundred (200) miles of any of my work locations for the Company, I will not, directly or indirectly, for myself or on behalf of or in connection with any other person, entity or organization: (a) engage in any business or activity that is competitive with the business of the Company; (b) … assist or be connected with (including, but not limited to, as an employee, consultant, or otherwise) any business that directly or indirectly competes or is seeking to compete with the business of the Company; and/or (c) undertake any efforts or activities toward commencing any business or activity that could be competitive with the business of the Company." Ex. 3, ¶ 2; Ex. 4, ¶ 2.

13.     Defendants further agreed to keep confidential and not disclose Confidential Information of Ronnoco. *Id.* ¶ 4.

14.     Defendants further agreed that Ronnoco may obtain an injunction to enforce the Agreements. *Id.* ¶ 8.

15.     Defendants promised to pay Ronnoco's reasonable legal fees associated with any enforcement action. *Id.* ¶ 9.

16.     As stated in the Agreements, the parties agreed that the venue for an action to enforce the Agreements shall be state or federal courts having jurisdiction over St. Louis County, Missouri. *Id.* ¶ 11.

17.     In their employment, Defendants had access to confidential, proprietary, and trade secret information relating to customers, pricing and product lines of Ronnoco/Trident.

18.     In the course of their employment with Ronnoco/Trident, Defendants worked in early 2020 on certain contracts for which Ronnoco/Trident was competing.

19.     On July 16, 2020, Torres left his employment with Ronnoco.

20.     On July 23, 2020, Castagna left his employment with Ronnoco.

21.     After Castagna left his employment with Ronnoco, Ronnoco learned that Castagna has breached a number of provisions of the Castagna FCA with Ronnoco, including accepting employment with a direct competitor called Smart Beverage, Inc. d/b/a/ Thirsty Coconut ("Thirsty Coconut").

22.     Similarly, after Torres left his employment with Ronnoco, Ronnoco learned that Torres has breached a number of provisions of the Torres FCA with Ronnoco, including accepting employment with a direct competitor, Thirsty Coconut.

23.     Thirsty Coconut entered into a Distribution Agreement with Ronnoco/Trident in May, 2014, in which it agreed to purchase and resell Trident's "Juice Alive" brand of 100% fruit juice beverage concentrates as a distributor. This agreement did not expire until October, 2020.

24.     In the Distribution Agreement, Thirsty Coconut agreed to not promote or distribute products manufactured by itself or others that are substantially the same as the Juice Alive product offered by Ronnoco/Trident.

25.     In early 2020, and possibly earlier, Thirsty Coconut began to violate the Distribution Agreement by competing directly with Ronnoco/Trident to distribute products manufactured by others that are substantially the same as the Juice Alive product.

26.     After Defendants left their employment with Ronnoco, Defendants have worked on behalf of Thirsty Coconut to help it directly compete with Ronnoco for customer contracts in violation of Thirsty Coconut's Distribution Agreement with Ronnoco/Trident.

27.     Thus, Defendants have violated their noncompete obligations after leaving their employment with Ronnoco.

28.     In order to protect its trade secrets and enforce its non-compete Agreements, Ronnoco is forced to bring this action to enjoin Defendants immediately, as well as for other damages and relief.

### Jurisdiction and Venue

29.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

30.     For diversity jurisdiction purposes, Ronnoco is a citizen of Missouri and Delaware; Castagna is a citizen of Texas; and Torres is a citizen of California. Therefore, there is complete diversity of citizenship between the parties.

31.     The amount in controversy is in excess of $75,000 in that Defendants have caused or, if not enjoined, will cause Ronnoco to suffer lost profits in excess of $75,000.

32.     This Court also has pendant jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that all of Ronnoco's claims against Defendants are so related that they form part of the same case or controversy under Article III of the United States Constitution.

33.     This Court has specific personal jurisdiction over Castagna pursuant to R.S.Mo. § 506.500.1(1) & (2) because Castagna entered into the Castagna FCA with Ronnoco, a Missouri limited liability company; agreed to jurisdiction in this Court in the Castagna FCA; was employed by Ronnoco; and thereby transacted business within Missouri.

34.     This Court has specific personal jurisdiction over Torres pursuant to R.S.Mo. § 506.500.1(1) & (2) because Torres entered into the Torres FCA with Ronnoco, a Missouri limited liability company; agreed to jurisdiction in this Court in the Torres FCA; was employed by Ronnoco; and thereby transacted business within Missouri.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) & (3) because the events giving rise to the claims in this action occurred in substantial part in this District (where Defendants accepted the Agreements and transacted business) and threatened harm has occurred and will continue to occur here if Defendants are not enjoined.

### Allegations Common to All Counts

36.     Ronnoco is headquartered in the City of St. Louis, Missouri.

37.     For over 100 years, Ronnoco has sold and distributed coffee and other products in the United States. Over the years, Ronnoco has expanded geographically and has also expanded its product offering beyond coffee.

38.     In early 2020, Ronnoco acquired a majority ownership interest in Trident Marketing, Inc. and Trident Beverage, Inc. ("Trident"). The assets of Trident were acquired by Trident Holdings, LLC. Ronnoco acquired 80% membership interest in Trident Holdings, LLC. Today, Trident and Ronnoco are in a parent/subsidiary relationship.

39.     Ronnoco/Trident markets a line of 100% fruit juice beverage concentrates dispensed under the name "Juice Alive."

40.     Over the years, Ronnoco/Trident have created a substantial and significant customer base and reputation for their products and customer service.

41.     In March, 2020, Castagna (while employed by Trident) accepted an offer of employment with Ronnoco which specified he would be in the position of Territory Manager with Ronnoco and Trident. Ex. 1.

42.     In March, 2020, Torres (while employed by Trident) accepted an offer of employment with Ronnoco which specified he would be in the position of Territory Manager with Ronnoco and Trident. Ex. 2.

43.    As employees of Ronnoco/Trident, Castagna and Torres owed a duty of loyalty to those entities as their employers.

44.    Under Missouri law, an employee owes a duty of loyalty to his employer that he must not, while employed, act contrary to the employer's interests and, in general terms, owes a duty of loyalty as one of the incidents of the employer-employee relationship.

45.    Castagna's territory was in Texas.  His territory was a geographic area that included the upper half of Texas.

46.    Torres' territory was in California. His territory was a geographic area that included California, Nevada and Arizona.

47.    In their position as Territory Managers, Defendants had access to confidential information pertaining to Ronnoco/Trident's customers and products. Because of Defendants' direct involvement in the expansion of Ronnoco/Trident's sales within their territories, they participated in the creation of Ronnoco/Trident's trade secrets involving those customers within their territories. For this reason, Ronnoco required as a condition of their employment that Defendants execute the Agreements.

48.    On March 17, 2020, Castagna accepted the terms and signed the Castagna FCA with Ronnoco. A true and correct copy of the Castagna FCA is attached hereto and incorporated herein as Exhibit 3.

49.    On March 17, 2020, Torres accepted the terms and signed the Torres FCA with Ronnoco. A true and correct copy of the Torres FCA is attached hereto and incorporated herein as Exhibit 4.

50.    Exhibits 3 and 4, the Fair Competition Agreements signed by Castagna and Torres (the "Agreements"), respectively, are identical except for the names and signatures on each.

51.     The Agreements prohibit Defendants from working with a competitor of Ronnoco for two (2) years after employment with Ronnoco.

52.     Specifically, Section 2 of the Agreements provides:

> [d]uring my employment and for two (2) years thereafter, and within two hundred (200) miles of any of my work locations for the Company, I will not, directly or indirectly, for myself or on behalf of or in connection with any other person, entity or organization: (a) engage in any business or activity that is competitive with the business of the Company; (b) … assist or be connected with (including, but not limited to, as an employee, consultant, or otherwise) any business that directly or indirectly competes or is seeking to compete with the business of the Company; and/or (c) undertake any efforts or activities toward commencing any business or activity that could be competitive with the business of the Company.

Ex. 3 at ¶ 2; Ex. 4 at ¶ 2.

53.     The Agreements further prohibit Defendants from soliciting Ronnoco's employees, clients or customers, which is set forth in Section 3 of the Agreements as follows:

> During my employment and for two (2) years thereafter, I will not, directly or indirectly, for myself or on behalf of or in connection with any other person, entity or organization: (a) induce or attempt to induce any employee or consultant of the Company to leave the employ or services of the Company or in any way interfere with the relationship between the Company and any employee or consultant thereof; and/or (b) call on, solicit, have contact with, or service any client of the Company with whom I have had material contact, in order to (i) solicit business of the type provided by the Company, (ii) to induce or attempt to induce such person or entity to cease doing business with, or reduce the amount of business conducted with, the Company, or (iii) in any way to interfere with the relationship between any such person or entity and the Company.

*Id.* at ¶ 3.

54.     Additionally, the Agreements prohibit Defendants from disclosing Ronnoco's confidential and proprietary information, as set forth in Section 4:

I will keep confidential and not disclose or use, either during or after my employment, any Confidential Information of the Company, except as required in good faith in performing my employment duties for the Company or as authorized by the Chief Executive Officer of the Company in a signed writing addressed specifically to me. "Confidential Information" means any information that is used, developed, obtained or received by the Company in connection with the Company's customer or supplier relationships and its other trade secrets, including but not limited to the following: (a) client and prospective client information, including client lists, compilations of client data, client preferences, and personal and/or financial information relating to clients; (b) business information, including contractual arrangements, business plans, strategies, tactics, policies, procedures, resolutions, litigation or negotiations; (c) marketing information, including sales or product plans, strategies, tactics, methods, or market research data; (d) financial information, including costs and performance data, pricing information, sales figures, profit or loss figures, debt arrangements, equity structure, investors and holdings; (e) personnel information, including personnel lists, resumes, personnel data, organizational structure and performance evaluations; and (f) product or service information, such as drawings, schematics, sketches, models, software, hardware, computer systems, source codes, suppliers, materials, equipment, research and development data, testing data, and other similar records. If ordered by a court of competent jurisdiction to disclose Confidential Information, I will provide written notice to the Company of such order immediately and cooperate in its efforts to safeguard such information. For the avoidance of doubt, Confidential Information does not include information in the public domain.

*Id.* at ¶ 4.

55.     During their employment with Ronnoco/Trident, Defendants acquired significant confidential and proprietary information and trade secrets of Ronnoco/Trident, including without limitation: (a) access and knowledge concerning Ronnoco/Trident's information relating to customers within his territory; (b) access and knowledge regarding Ronnoco/Trident's pricing overall and to specific customers; (c) access and knowledge regarding Ronnoco/Trident's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within his territory.

56.     Additionally, during Defendants' employment with Ronnoco/Trident, they were directly involved in the development and expansion of Ronnoco/Trident's customers within their respective territories.

57.     On July 16, 2020, Torres' employment with Ronnoco ended.

58.     On July 23, 2020, Castagna's employment with Ronnoco ended.

59.     After Defendants' departures from Ronnoco/Trident, they breached and continue to breach their contractual noncompete obligations with Ronnoco.

60.     Specifically, Defendants are working for Thirsty Coconut, a direct competitor of Ronnoco.

61.     Thirsty Coconut is in the same industry and directly competes with Ronnoco in the area of frozen fruit juice beverages.

62.     Additionally, Defendants intend to divert Ronnoco's customers to Thirsty Coconut in violation of the Agreements.

63.     Even prior to his departure from Ronnoco/Trident, Torres breached his duty of loyalty to Ronnoco/Trident.

64.     For example, on July 2, 2020, a Thirsty Coconut employee named Charles Peoples (who, like Castagna and Torres is a former Ronnoco employee) sent an email to Torres and others attaching a "list of potential clients nationally for our new Choice Partners Co-op relationship. You will have to scroll through the list to identify accounts in your respective territories. I did see members in each of your areas." Ex. 5.

65.     Torres received that July 2, 2020 email at a personal email address, torresjeremy1125@gmail.com, while he was still employed by Ronnoco/Trident.

66.     Torres did not leave his employment with Ronnoco/Trident until July 16, 2020.

67.    The list of Choice Partners Co-Op members that was attached to Exhibit 5 includes a number of Ronnoco's clients, which the email states are "potential" clients of Thirsty Coconut.

68.    Castagna emailed Peoples on July 29, 2020, just six days after he left Ronnoco, and asked: "Do we have any brochures or documents I can send the districts other than the flavors? I have one that is having a meeting on Monday and would like something to present to the principals." Ex. 6.

69.    On information and belief, those "districts" are school districts in Texas and include school districts that are Ronnoco's customers.

70.    As one more example of Defendants' employment with Thirsty Coconut, both were invited in August, 2020 to a "Barfresh / Smart Beverage Weekly Sales Call". Ex. 7.

71.    The invitation was sent to "Jeremy Torres" at jeremy@smartbeverage.com. *Id.*

72.    Peoples    forwarded    the    invitation    to    "Kevin    Castagna"    at kevin@smartbeverage.com. *Id.*

73.    These emails show Castagna and Torres working for Thirsty Coconut, a direct competitor of Ronnoco.

74.    Castagna's employment with Thirsty Coconut (within 200 miles of his work location for Ronnoco, which was Dallas/Ft. Worth, Texas) is a blatant violation of his obligations under the Castagna FCA.

75.    Torres' employment with Thirsty Coconut (within 200 miles of his work location for Ronnoco, which was Rancho Cucamonga, California) is a blatant violation of his obligations under the Torres FCA.

11

76.     Upon information and belief, Defendants have caused Ronnoco to lose profits because their actions have caused customers to award work to Thirsty Coconut that would otherwise have been awarded to Ronnoco/Trident.

77.     Ronnoco sent a cease and desist letter to Defendants and to Thirsty Coconut (through counsel for Thirsty Coconut), regarding their violations of the Agreements.

78.     Neither Defendants nor Thirsty Coconut responded to the cease and desist letter.

## COUNT I: BREACH OF CONTRACT

79.     Ronnoco incorporates by reference paragraphs 1 through 78 of its Verified Complaint as though fully set forth herein.

80.     A valid contract exists between Ronnoco and Defendants in the form of the Fair Competition Agreements they both signed. Exs. 3, 4.

81.     The contracts were, and are, supported by sufficient consideration as evidenced by Defendants' continued employment with Ronnoco.

82.     Despite Ronnoco's performance and willingness to perform in compliance with the Agreements, Defendants breached the contracts.

83.     Defendants agreed that for a period of two (2) years following their termination of employment from Ronnoco, they would not: (1) directly or indirectly act (whether as an employee, consultant, independent contractor, or in any other role) in a role for any business competitive to Ronnoco and (2) divert or attempt to divert any clients or customers of Ronnoco.

84.     Defendants also agreed that they would not disclose, duplicate, or use Ronnoco's confidential and/or proprietary information (including trade secrets) either during their employment or any time thereafter.

85.     Defendants breached the Agreements by, among other things, (1) agreeing to employment in some capacity with a direct competitor, Thirsty Coconut, within 200 miles of their former work location for Ronnoco; (2) upon information and belief, sharing Ronnoco's confidential and proprietary information with Thirsty Coconut and/or using it on Thirsty Coconut's behalf; and (3) diverting or attempting to divert Ronnoco's customers to Thirsty Coconut.

86.     While the full extent of Defendants' actions and the damages caused thereby are presently unknown, Defendants' breach of the Agreements has caused and will continue to cause damages to Ronnoco, including without limitation jeopardy to and/or loss of Ronnoco's existing and future business relationships and contracts with its customers, lost profits, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of Ronnoco's reputation, and loss of competitive advantage.

87.     Accordingly, injunctive and other relief should be issued forthwith to enjoin Defendants' conduct, hold Defendants accountable for the promises and agreements they made, and award relief to Ronnoco to remedy Defendants' multiple breaches of the Agreements.

## COUNT II: BREACH OF THE DUTY OF LOYALTY
### (Against Torres)

88.     Ronnoco incorporates by reference paragraphs 1 through 87 of its Verified Complaint as though fully set forth herein.

89.     Torres owed a duty of loyalty to Ronnoco/Trident while employed there.

90.     Torres violated his duty of loyalty to Ronnoco/Trident when he began working for a direct competitor, Thirsty Coconut, while still employed by Ronnoco/Trident.

91.     Specifically, at least one email shows that Torres was communicating with Thirsty Coconut and was involved in discussions about stealing Ronnoco/Trident's customers before he had left his employment with Ronnoco/Trident. Ex. 5. Torres received this email on his personal

Gmail account on July 2, 2020, but he did not leave his employment with Ronnoco/Trident until July 16, 2020.

92.     Torres also violated his duty of loyalty to Ronnoco/Trident by, upon information and belief, sharing Ronnoco's confidential and proprietary information with Thirsty Coconut and/or using it on Thirsty Coconut's behalf.

93.     Torres also violated his duty of loyalty to Ronnoco/Trident by, upon information and belief, taking steps to divert customers from Ronnoco/Trident to Thirsty Coconut while employed by Ronnoco/Trident.

94.     While the full extent of Torres' actions and the damages caused thereby are presently unknown, Torres' breach of his duty of loyalty has caused and will continue to cause damages to Ronnoco, including without limitation jeopardy to and/or loss of Ronnoco's existing and future business relationships and contracts with its customers, lost profits, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of Ronnoco's reputation, and loss of competitive advantage.

95.     Accordingly, injunctive and other relief should be issued forthwith to enjoin Torres' conduct, hold Torres accountable for the promises and agreements he made, and award relief to Ronnoco to remedy Torres' multiple breaches of the Torres FCA.

## COUNT III: VIOLATION OF MISSOURI UNIFORM TRADE SECRETS ACT

96.     Ronnoco incorporates by reference the allegations of paragraphs 1 through 95 of its Verified Complaint as though fully set forth herein.

97.     The Missouri Uniform Trade Secrets Act, Mo.Rev.Stat. § 417.450 et seq. ("MUTSA") provides that an owner of a trade secret may bring a civil action to prevent any actual or threatened misappropriation of a trade secret.

98.     For the reasons set forth above, Defendants misappropriated and may continue to appropriate Ronnoco's trade secrets – that is Ronnoco's customer names and information – in violation of MUTSA.

99.     Accordingly, Ronnoco brings this claim to prevent the actual or threatened misappropriation of its trade secrets by Defendants, as specifically provided under MUTSA.

100.    Ronnoco takes reasonable steps to maintain the secrecy of its trade secrets, such as restricting access to information to only certain employees and requiring logins and passwords on its Information Technology systems.

101.    Ronnoco requests a temporary restraining order, preliminary injunction, and permanent injunction under Mo.Rev.Stat. § 417.455 to prevent any actual or threatened misappropriation of its trade secrets.

102.    Ronnoco also requests an award against Defendants to the maximum extent permitted under Mo.Rev.Stat. § 417.457.

## COUNT IV: INJUNCTIVE RELIEF

103.    Ronnoco incorporates by reference the allegations of paragraphs 1 through 102 of its Verified Complaint as though fully set forth herein.

104.    Defendants have breached, and continue to breach, their contractual Agreements with Ronnoco, including without limitation working for a direct competitor of Ronnoco and the threat to use or actual use of Ronnoco's trade secrets and other confidential and proprietary information, materials, and documents for his employment at Thirsty Coconut, all of which directly violates the Agreements.

105.    Ronnoco cannot fully and adequately determine the extent and effect of Defendants' actions at this time, which remain ongoing and unlawful.

106.    Allowing Defendants to violate their contractual agreements, applicable law, or both, has resulted and will continue to result in irreparable harm to Ronnoco, including without limitation loss of customers, loss of good will, loss of customer contacts, unfair competition, loss of confidential business information, loss of trade secrets, loss of reputation, loss of contracts with customers, loss of referral sources, and loss of competitive advantage.

107.    Ronnoco will therefore suffer irreparable injury and harm from Defendants' violations should injunctive relief not issue in favor of Ronnoco and against Defendants.

108.     At this time, it is impossible for Ronnoco to calculate the damage that has resulted, and will continue to result, from Defendants' violations. It is equally impossible to calculate the resulting damages to Ronnoco's loss of tangible or intangible property, loss of customers, loss of good will, loss of customer contacts, unfair competition, loss of confidential business information, loss of trade secrets, loss of reputation, loss of contracts with customers, loss of referral sources, and loss of competitive advantage.

109.    Any harm that Defendants may allegedly incur as a result of the requested relief is overwhelmingly outweighed by the harm to Ronnoco should the relief not issue, a situation that Defendants unilaterally created by themselves.

110.    Injunctive relief is not against the public interest; it would merely enforce Defendants' contractual obligations.

111.    The requested injunctive relief, as detailed in Ronnoco's prayer for relief below, must be granted to avoid any immediate irreparable injury, loss, or damage to Ronnoco.

112.    The requested injunctive relief serves to preserve the status quo pending a determination of the controversy between the parties.

113.     Ronnoco has no adequate remedy at law concerning its claims set forth in this Count.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ronnoco Coffee, LLC prays for judgment against Defendants Castagna and Torres as follows:

(a)     Monetary damages in an amount unknown at this time and to be proven at trial as a result of Defendants' breach of contract, breach of the duty of loyalty, and violation(s) of the Missouri Uniform Trade Secrets Act;

(b)     Entering a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendants and their agents:

(i)     With respect to confidential and proprietary information (including trade secrets) of Ronnoco, from disclosing, using, or providing any such documents, information, or trade secrets, directly or indirectly, to anyone, except for the return of such documents, information, or trade secrets directly to Ronnoco or its attorneys;

(ii)     During the period of two (2) years following the date of termination of Defendants' employment with Ronnoco, from acting, directly or indirectly (whether as an owner, employee, consultant, independent contractor or any other role) in any capacity with a company that directly competes with Ronnoco including Thirsty Coconut; and

(iii)     During the period of two (2) years following the date of termination of Defendants' employment with Ronnoco, calling upon, soliciting, diverting, attempting to call upon, solicit, or divert (or assist in any of the foregoing), or accept

business from/do business with any customer/potential customer of Ronnoco that

was a customer/potential customer during Defendants' employment with Ronnoco.

(c)     Award Ronnoco its attorneys' fees, costs and expenses incurred or expended;

(d)     Award pre- and post-judgment interest at the maximum rate permitted by law; and

(e)     Such other and further relief as the Court deems just and proper.


Dated: January 19, 2021                Respectfully submitted,

DOWD BENNETT LLP

By:  */s/ John D. Comerford*
       John D. Comerford #60164MO
       James B. Martin #70219MO
       7733 Forsyth Blvd., Suite 1900
       St. Louis, Missouri 63105
       (314) 889-7300 (phone)
       (314) 863-2111 (facsimile)
       jcomerford@dowdbennett.com
       jbmartin@dowdbennett.com

       *Attorneys for Plaintiff*

## VERIFICATION

I, John Walker, declare:

1. I am President of Trident Marketing, Inc. and Trident Beverage, Inc. which are subsidiaries of Plaintiff Ronnoco Coffee LLC d/b/a Ronnoco Beverage Solutions.

2. I verify that the foregoing Verified Complaint for and on behalf of Ronnoco Coffee LLC was duly prepared under my direction with the assistance of counsel; that the facts stated therein have been assembled by authorized employees and counsel for Ronnoco; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

3. I declare under penalty of perjury that the foregoing is true and correct.

_John Walker_

Executed in ___19th___ on ___January___, 2021.


## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2021 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ John D. Comerford

19