UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONNOCO COFFEE LLC, d/b/a RONNOCO BEVERAGE SOLUTIONS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:21-CV-00071 JAR |
| KEVIN CASTAGNA and JEREMY TORRES, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The background of this case is set out in detail in the Court's December 16, 2021 Order and incorporated by reference herein. (Doc. No. 134). Briefly, Plaintiff Ronnoco Coffee, LLC, d/b/a Ronnoco Beverage Solutions ("Ronnoco"), filed this action against Defendants Kevin Castagna ( "Castagna") and Jeremy Torres ("Torres") (collectively "Defendants") to enforce its Fair Competition Agreement ("FCA") against each of them, to enjoin the threatened misappropriation of trade secrets, to enjoin interference with prospective business relationships, and to sue for breach of contract and breach of the duty of loyalty. In conjunction with its complaint, Ronnoco filed a motion for temporary restraining order (TRO) and preliminary injunction.

On March 5, 2021, the Court issued a TRO in Ronnoco's favor and temporarily restrained Defendants Castagna and Torres from disclosing Ronnoco's confidential and proprietary information; acting in any capacity with a company that directly competes with Ronnoco; and soliciting any customers of Ronnoco. The Court further ordered Ronnoco to post a bond in the amount of $10,000.00. Following a hearing on April 20, 2021, the Court issued a

preliminary injunction in favor of Ronnoco. The case proceeded as a bench trial on the merits on June 2 and 3, 2021, and on December 16, 2021, the Court vacated the preliminary injunction previously entered, dismissed Ronnoco's claims against Defendants with prejudice, and assessed costs against Ronnoco.

Defendants request the Court award them their reasonable attorneys' fees of $191,230.00 as the prevailing parties herein. (Doc. No. 136). Defendants have also filed a motion for bill of costs in the amount of $4,454.40 (Doc. No. 139) and a motion for release of the bond (Doc. No. 141). The motions are fully briefed and ready for disposition.

### I.        Motion for attorneys' fees

"Missouri follows the American Rule on attorneys' fees, which provides that each party to litigation must pay its own litigation expenses unless a statute specifically authorizes recovery of attorneys' fees or a contract provides for them." Crutcher v. MultiPlan, Inc., 22 F.4th 756, 763-64 (8th Cir. 2022) (quoting Monarch Fire Prot. Dist. of St. Louis Cnty. v. Freedom Consulting & Auditing Servs., Inc., 644 F.3d 633, 637 (8th Cir. 2011) (citing Lucas Stucco & EIFS Design, LLC v. Landau, 324 S.W.3d 444, 445 (Mo. 2010) (en banc)).[1] Where "a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." DocMagic, Inc. v. Mortgage P'ship of Am., LLC, 729 F.3d 808, 812 (8th Cir. 2013).

Defendants contend they are entitled to their attorney's fees under paragraph 9(b) of the FCA, which they characterize as a fee-shifting provision under which the party that prevails in a dispute between them is entitled to recover its attorney's fees. Neither Defendants' Motion for

---

[1] The FCA provides that it is governed by Missouri law and the parties agree that Missouri law governs this action.

Attorney's Fees nor their Memorandum in Support quotes the language of Section 9(b), which provides: "***If I violate any of my obligations under this Agreement, then*** (a) the applicable restricted period shall be extended to account for the period during which I was in breach; and (b) ***I will pay the Company's reasonable legal fees and costs associated with any enforcement action***." (emphases added). The FAC defines the "Company" as Ronnoco Coffee, LLC.

In Missouri, the interpretation of a contract is a question of law. Leggett v. Mo. State Life Ins., 342 S.W.2d 833, 850 (Mo. 1960) (en banc). The "cardinal principle" of contract interpretation "is to ascertain the intention of the parties and to give effect to that intent." Monarch Fire Prot. Dist., 644 F.3d at 638 (quoting Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003)). In doing so the Court uses "the plain, ordinary, and usual meaning of the contract's words" and considers the "whole document." Adbar Co., L.C. v. PCAA Missouri, LLC, No. 4:06-CV-1689 (JCH), 2008 WL 68858, at *4 (E.D. Mo. Jan. 4, 2008) (citing Jackson County v. McClain Enters., 190 S.W.3d 633, 640 (Mo. Ct. App. 2006)). See also Shaw Hofstra & Associates v. Ladco Development, Inc., 673 F.3d 819, 826 (8th Cir. 2012).

After careful review of the FCA as a whole, and following the well-established principles of contract interpretation, the Court finds the plain, ordinary, and usual meaning of Paragraph 9(b) imposes an obligation on Defendants, if they violate any of their obligations under the FCA, to pay Ronnoco its reasonable attorney's fees and costs incurred in any enforcement action. Defendants' assertion that this provision entitles them to attorney's fees because they ultimately prevailed in the enforcement action Ronnoco brought against them for breach of the FCA is unsupported by the language of the FCA and without merit.

Nor is Defendants' assertion supported by the cases cited in their supporting memorandum. The FCA does not have a "prevailing party" provision, under which the party that

prevails in litigation in connection with a dispute between the parties under their agreement is entitled to fees from the losing party. See, e.g., Sheppard v. East, 192 S.W.3d 518, 523 (Mo. Ct. App. 2006) ("In the event of litigation between the parties, the prevailing party shall recover ... the cost of litigation including reasonable attorney's fees."); Jackson v. Christian Salvesen Holdings, Inc., 978 S.W.2d 377, 384 (Mo. Ct. App. 1998) ("In the event any dispute between the parties hereto concerning this [ ] Agreement should result in litigation, the prevailing party shall be reimbursed by the other for all reasonable costs, including, but not limited to, reasonable attorney's fees as may be allowed by a court of competent jurisdiction."). Instead, the FCA provides that Defendants will pay Ronnoco its attorney's fees in the event they violated any of their obligations under the FCA and Ronnoco brings an action to enforce the FCA. The language of the FCA does not create a reciprocal obligation for Ronnoco to pay Defendants their attorney's fees, under any circumstances.

In their reply memorandum, Defendants argue that Paragraph 9(b) is a "unilateral fee shifting" provision which is unenforceable as against public policy, yet concede they were "unable to locate any decision binding on this Court or in Missouri which discusses unilateral fee shifting." (Doc. No. 140 at 5). Defendants then urge the Court to interpret Paragraph 9(b) as a "bilateral fee shifting" provision entitling them to attorney's fees from Ronnoco because they prevailed in this case based on Missouri law requiring the "successful party" to receive an attorney's fee award if a contract between the litigating parties contains an attorney's fee provision, citing Dalton Petroleum, Inc. v. Devlin Energy Group, L.L.C., No. 1:03-CV-35 ERW, 2005 WL 1518391 (E.D. Mo. June 27, 2005); Luck "E" Strike Corp. v. First State Bank of Purdy, 75 S.W.3d 828, 835 (Mo. Ct. App. 2002); and White v. Marshall, 83 S.W.3d 57, 63 (Mo. Ct. App. 2002). These cases are unavailing, however, as none of them involved an award of

contractual attorney's fees to a party who was not entitled to those fees under the specific language of the applicable contract. Rather, these cases stand for the principle that a court may not decline to award attorney's fees to a prevailing party where the contract provides for a fee award *to that party*, or to the prevailing party where the contract provides that "the prevailing party" is entitled to fees.

Lastly, numerous cases under Missouri law have awarded contractual attorney's fees to a prevailing party where the contract at issue provided that only one party was entitled to fees if it prevailed in litigation between the parties in enforcing the contract. In Crutcher, 22 F.4th at 764, the Eighth Circuit cites two such cases: Lee v. Investors Title Co., 241 S.W.3d 366, 368 (Mo. Ct. App. 2007) (awarding attorney's fees where the contract at issue expressly provided that the buyers and builder agreed to indemnify the Title Company for "any and all loss, cost, damage and expense of every kind including attorneys' fees" which were incurred "in connection with its enforcement of [Title Company's] rights under this Agreement[.]"; and RJF International Corp. v. B.F. Goodrich Co., 880 S.W.2d 366, 369 (Mo. Ct. App. 1994) (awarding attorneys' fees to seller under an agreement that provided the buyer would indemnify seller for any claims, including attorney's fees, "resulting from … any breach or default in the performance or observance by Buyer … of any of the covenants or other obligations which Buyer … is to perform or observe under this Agreement[.]").

For these reasons, the Court finds no contractual basis for an award of fees to Defendants and will deny their motion.

## II.      Bill of costs

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Cowden v. BNSF Railway Co., No.

4:08CV01534, 2014 WL 107844, at *1 (E.D. Mo. Jan 3, 2014). Pursuant to 28 U.S.C. § 1920, the Court may tax costs for: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the cost of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under § 1923 of this title; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title. The Court may not award costs other than those authorized by § 1920, because this section "imposes rigid controls on cost-shifting in federal courts." Cowden, 2014 WL 107844, at *1 (quoting Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002)). Upon objection by the opposing party as to authorized costs, however, the Court may exercise its discretion to grant or deny costs. Id. (citing Pershern v. Fiatallis North America, Inc., 834 F.2d 136, 140 (8th Cir. 1987)).

In their motion for attorneys' fees, Defendants requested costs of $5,169.03 for deposition transcripts. (Doc. No. 136-1). Ronnoco argued that Defendants had failed to comply with this Court's local rule requiring that a verified bill of costs be filed together with documentation for the costs requested. Ronnoco further argued that Defendants appeared to be impermissibly seeking costs for both printed and electronically recorded transcripts of the three depositions of John Walker. Defendants responded by timely[2] submitting a bill of costs and amending their request to exclude the costs associated with videotaping Walker's depositions. Defendants seek costs in the amount of $4,454.40, which includes $4,426.40 for printed

---

[2] Defendants filed their bill of costs on January 6, 2022, twenty-one days after the entry of judgment on December 16, 2021. E.D. Mo. L.R. 8.03.

transcripts and $28.00 for fees and disbursements for printing. There being no other objection from Ronnoco, Defendants' motion for bill of costs will be granted.

### III.    Motion to release bond

Under Federal Rule of Civil Procedure 65(c), an injunction bond provides security for "such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); Slidell v. Millenium Inorganic Chemicals, Inc., 460 F.3d 1047, 1059 (8th Cir. 2006); see also N. States Power Corp. v. Fed. Transit Admin., 270 F.3d 586, 588 (8th Cir. 2001) (injunction bond "should be set in an amount that will insure the non-movant against any financial loss it might sustain as a result of the injunction, in the event the non-movant ultimately prevails in the litigation.").

Rule 65 does not explicitly address when an enjoined party may recover on a bond and the Eighth Circuit has not addressed the issue. However, a majority of circuits have held there is a rebuttable presumption that a wrongfully enjoined party is entitled to recover provable damages up to the bond amount. See Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey, 939 F.3d 597, 606-08 (3d Cir. 2019) ("[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to recover provable damages up to the bond amount."); Front Range Equine Rescue v. Vilsack, 844 F.3d 1230, 1234 (10th Cir. 2017) ("[W]here there is a finding that a defendant has been wrongfully enjoined, there is a presumption of recovery and the district court's discretion to deny damages is limited."); Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 558-59 (2d Cir. 2011) ("Although we hold that a wrongfully enjoined party is entitled to a presumption in favor of recovery, that party is not automatically entitled to the damages sought. The presumption applies to 'provable' damages."); Glob. Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 23 (1st Cir. 2007) ("[W]e adopt the majority rule that there is a rebuttable

7

presumption that a wrongfully enjoined party is entitled to have the security executed so as to recover provable damages up to the amount of the security."); Milan Exp., Inc. v. Averitt Exp., Inc., 254 F.3d 966, 981 (11th Cir. 2001) ("To recover against an injunction bond, a party must prove that it was wrongfully enjoined and that its damages were proximately caused by the erroneously issued injunction."); Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994) ("[W]e join what appears to be the majority and hold there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond."); Nat'l Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1134 (D.C. Cir. 1992) ("[A] defendant injured by a wrongfully issued preliminary injunction is presumptively entitled to recovery on the injunction bond."); Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill., 717 F.2d 385, 391-92 (7th Cir. 1983) (agreeing with the majority approach "that a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case."). But see H & R Block, Inc. v. McCaslin, 541 F.2d 1098, 1099 (5th Cir. 1976) ("The awarding of damages pursuant to an injunction bond rests in the sound discretion of the court's equity jurisdiction.").

The presumption in favor of recovery does not, however, automatically entitle that party to the damages sought. Nokia, 645 F.3d at 559. The presumption only applies to "provable damages." Id. (citing Global NAPs, 489 F.3d at 23 and Nintendo, 16 F.3d at 1036). "Thus, the wrongfully enjoined party must first demonstrate that the damages sought were proximately caused by the wrongful injunction." Id. (citing Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, 910 F.2d 1049, 1056 (2d Cir. 1990); Nintendo, 16 F.3d at 1038). "The wrongfully

enjoined party must also properly substantiate the damages sought," but not with mathematical certainty. Id. (citing Global NAPs, 489 F.3d at 24).

Defendants have not met their burden of establishing damages caused by the wrongful injunction. Defendants admittedly continued to work for and were compensated by Thirsty Coconut during the injunction period and at certain times in disregard for this Court's Orders, of which they were aware, and the FCAs Defendants signed and agreed to. Despite their contention that they were deprived of the opportunity to earn commissions on juice sales during this time (see Doc. No. 126 at 43), Defendants repeatedly argued throughout this litigation that they did not threaten harm to Ronnoco because the COVID-19 pandemic had closed schools, suppressing demand and  sales not just in their territories but throughout the industry. Any impact on Defendants' sales opportunities was a result of the pandemic, and not this Court's preliminary injunction. Because Defendants have failed to establish damages proximately caused by the erroneously issued injunction, their motion for release of bond will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Attorney Fees [136] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Bill of Costs [139] is **GRANTED**. Costs shall be taxed against Plaintiff Ronnoco Coffee LLC d/b/a Ronnoco Beverage Solutions and in favor of Defendants Kevin Castagna and Jeremey Torres in the amount of **$4,454.40.**

**IT IS FINALLY ORDERED** that Defendants' Motion for Release of Bond [141] is **DENIED.**

Dated this 14th day of March, 2022.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**